IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRICAL BENEFIT FUND,         *

      Plaintiff,         *

v.         *     Civil No. TDC-18-0591

GREAT LAKES ELECTRICAL CONTRACTORS, INC.,     *

      Defendant.

\*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Default Judgment ("Motion") (ECF No. 10) filed by Plaintiff National Electrical Benefit Fund ("NEBF"). Defendant Great Lakes Electrical Contractors, Inc. ("Great Lakes") has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2(a). On May 14, 2018, in accordance with 28 U.S.C. § 636 and pursuant to Local Rule 301.6, Judge Chuang referred this case to me for a report and recommendation on NEBF's Motion. (ECF No. 12.) I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that NEBF's Motion be granted.

### I.     FACTUAL AND PROCEDURAL HISTORY

In this case, NEBF filed suit against Great Lakes under the Employee Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1132(e), to recover delinquent pension fund contributions and related relief. (ECF No. 1.) Great Lakes was personally served with the Complaint and summons (*see* ECF No. 5), but it did not file an answer or responsive pleading within the requisite time period. On March 27, 2018, NEBF moved for the Clerk's entry

of default (ECF No. 7), and the Clerk entered default against Great Lakes on April 4, 2018 (ECF No. 8). On April 26, 2018, NEBF filed the Motion, to which Great Lakes has not responded.

## II. LEGAL ANALYSIS

### A. Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Ryan*, 253 F.3d at 780. Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary

evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

    **B.**    **Liability**

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA further provides that employers who fail to make timely contributions are liable in a civil action for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and any other relief the Court deems appropriate. 29 U.S.C. § 1132(a), (g).

In the Complaint, NEBF alleges that it is a multiemployer employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2). (ECF No. 1 ¶ 4.) Great Lakes is an employer that has agreed to participate in the NEBF pursuant to collective bargaining agreements with several labor unions. (*Id.* ¶ 6.) Specifically, September 14, 1998, Great Lakes' representatives signed a Letter of Assent in which Great Lakes agreed to "comply with, and be bound by, all of the provisions contained" in an Inside Labor Agreement between the Lake County Division, Northeastern Illinois Chapter, NECA, Inc. and Local Union 150, IBEW, as well as "subsequent approved labor agreements." (ECF No. 11-8.) Great Lakes entered into similar agreements on

3

June 20, 2001 (regarding the Inside Labor Agreement between the Aurora Division, Northeastern Illinois Chapter, NECA, Inc. and Local Union 461) (ECF No. 11-10); June 25, 2001 (regarding the Inside Labor Agreement between Northeastern Illinois Chapter of NECA, Elgin Division and Local Union 117, IBEW) (ECF No. 11-2); and August 18 and 19, 2004 (regarding the Principal Labor Agreement and Communications Labor Agreement between the Electrical Contractors Assoc. of City of Chicago, NECA and Local Union 134, IBEW (ECF Nos. 11-6 & 11-4).[1] By signing the Letters of Assent and agreeing to "comply with, and be bound by," the terms of the relevant collective bargaining agreements, Great Lakes agreed to the following provision, which is contained in each of the collective bargaining agreements:

> It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund (NEBF) as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual employers will forward monies to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.
> The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(ECF Nos. 11-3 at 25; 11-5 at 22-23; 11-7 at 27-28; 11-9 at 21; 11-11 at 22-23.)

This term included in each of the collective bargaining agreements is consistent with Article 6 of the Restated Employees Benefit Agreement and Trust for the NEBF ("Trust

---

[1] In its Complaint, NEBF refers to the collective bargaining agreements entered into by IBEW Local Unions 117, 134, and 150, and to which Great Lakes was bound. (ECF No. 1 ¶ 3.) In its Motion, NEBF refers to an additional collective bargaining agreement entered into by IBEW Local Union 461 to which Great Lakes was bound. (ECF No. 11 ¶¶ 6, 11.)

Agreement"), which is referenced in each collective bargaining agreement. (ECF No. 11-1 at 2-8.)

Pursuant to the collective bargaining agreements, Great Lakes is required to submit contributions to NEBF on behalf of Great Lakes' covered employees. (ECF Nos. 11-3 at 25; 11-5 at 22-23; 11-7 at 27-28; 11-9 at 21; 11-11 at 22-23.) In addition to its obligations under the collective bargaining agreements, Great Lakes is also bound to the terms and conditions of the Trust Agreement (ECF No. 11-1). In general, under these agreements, Great Lakes is required to pay NEBF an amount equal to 3% of the gross labor payroll for Great Lakes' covered employees on a monthly basis. (*Id.* at 2.) Notwithstanding its obligations, Great Lakes failed to make the contributions required by the collective bargaining agreements and the Trust Agreement to NEBF for its covered employees. (ECF No. 1 ¶¶ 9-10.) In its Complaint, NEBF alleges that Great Lakes owes $10,654.43 in delinquent contributions in connection with work performed by its covered employees for the periods of July 2013 through September 2017. (*Id.*)

Accepting as true the unchallenged allegations of the Complaint, along with the evidence that NEBF submitted in connection with its Motion to show that Great Lakes was bound by the terms of the collective bargaining agreements and the Trust Agreement, NEBF has established Great Lakes' liability for failure to pay the contributions required by the collective bargaining agreements and the Trust Agreement.

### C. Damages

Having determined that NEBF has established Great Lakes' liability, it is now appropriate to determine the damages to which NEBF is entitled. The damages NEBF seeks in its Motion are appropriate under Rule 54(c) so long as "the record supports the damages requested." *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at

*3 (D. Md. Apr. 16, 2010). Here, NEBF has provided sufficient evidence to support its claim for damages in the amount of $14,555.66.

In support of its claim for damages, NEBF relies on an affidavit signed by Angel Losquadro ("Losquadro"), the Director of the Audit and Delinquency Department of NEBF. (ECF No. 11). Under the Trust Agreement, which Losquadro incorporates into the affidavit (ECF No. 11-1), NEBF may recover delinquent contributions, interest on delinquent contributions at a rate of ten percent, liquidated damages in the amount of twenty percent of the delinquent contributions, audit fees, and attorney's fees and costs incurred in collecting delinquent contributions. As discussed above, these damages are allowed under ERISA. 29 U.S.C. § 1132(g).

Based on Great Lakes' self-reporting to NEBF for the periods of March 2017 and September 2017, Losquadro states that Great Lakes was delinquent in its contributions in the amount of $7,050.44. (ECF No. 11 at 5.) Of this amount, Great Lakes made late payments totaling $1,776.90, leaving $5,273.54 that remains outstanding. (*Id.*)

In addition to the contributions that Great Lakes self-reported to NEBF, independent audits of Great Lakes' books and records indicate that Great Lakes owes an additional $3,604.00.[2] (ECF No. 11 at 4.) This amount is comprised of $568.11 in contributions for work performed in the jurisdiction of Local Union 150 between July 2013 and September 2016; $149.66 in contributions for work performed in the jurisdiction of Local Union 461 between July 2013 and September 2016; and $2,886.23 in contributions for work performed in the jurisdiction of Local Union 134 between January 2014 and December 2015.

---

[2] Losquadro states that the total underpayment revealed by the audits of Great Lakes' books and records is $3,603.99, which is one cent less than my calculation. I recommend that NEBF be awarded $3,603.99 because that is the amount sought in its Motion.

The sum of Great Lakes' self-reported delinquent contributions ($5,273.54) and the delinquent contributions uncovered by independent audits of Great Lakes' books and records ($3,603.99) is $8,877.53. NEBF notified Great Lakes of its delinquency, but Great Lakes did not respond to NEBF's demands or pay its delinquent contributions. (ECF No. 11 at 5.)

NEBF also seeks interest on the delinquent contributions in the amount of $1,772.74, the calculation of which is set forth in ECF No. 11-15. The amount of delinquent contributions and interest that NEBF seeks is less than what it sought in the Complaint and is supported by the evidence that NEBF has submitted. I recommend that the Court award NEBF $8,877.53 for Great Lakes' delinquent contributions and $1,772.74 for interest on those contributions.

In addition to liquidated damages and interest, Losquadro states that Great Lakes owes NEBF liquidated damages in the amount of $1,064.74. (*Id.* at 5.) Under the Trust Agreement, NEBF is entitled to "liquidated damages [in] an amount up to twenty percent (20%) of the delinquent contributions." (*Id.*) Twenty percent of the amount of Great Lakes' delinquent contributions ($8,877.53) is $1,775.51. However, NEBF only seeks $1,064.74 in liquidated damages, which it calculates as "20% of $7,054.44 plus $3,303.99." (ECF No. 11 at 5.) It is not clear how NEBF arrived at its calculation of $1,064.74, but the amount is supported by the Delinquency Report attached to Losquadro's affidavit. (ECF No. 11-15 at 4.) I recommend that NEBF be awarded liquidated damages in the amount of $1,064.74. This amount is less than what NEBF sought in its Complaint and is supported by Losquadro's affidavit.

NEBF also seeks to collect the audit fees of $515.55 that it incurred in connection with the independent audits of the books and records of Great Lakes. (ECF No. 11 at 18.) NEBF is entitled to collect these fees under the Trust Agreement. (ECF No. 11-1 at 7.) The audit fees that NEBF claims are the same as what it sought in its Complaint and are supported by Losquadro's

7

affidavit (*see* ECF Nos. 11-2 at 1; 11-13 at 1; 11-14 at 3.) I recommend that the Court award NEBF audit fees in the amount of $515.55.

NEBF also seeks an award of attorney's fees and costs, which are available in ERISA cases. 29 U.S.C. §1132(g)(2). When a court enters judgment in favor of the plaintiff in an ERISA action for a plan to recover unpaid contributions, it "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for twenty years or more may reasonably bill $300-475 per hour. Paralegals and law clerks may reasonably bill $95-150 per hour. These rates serve as guidelines in determining the reasonableness of hourly rates.

Throughout this litigation, NEBF has been represented by Jennifer Hawkins ("Ms. Hawkins") of the law firm Potts-Dupre, Hawkins & Kramer, Chrtd. (*See* ECF No. 10-1.) Ms. Hawkins has been a licensed attorney for more than 24 years and has been responsible for NEBF's ERISA collections proceedings at her law firm since 1996. (*Id.* ¶ 3.) Ms. Hawkins

charged a rate of $379.00 per hour in this case. (*Id.* ¶ 5.) This rate is within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. Ms. Hawkins' legal assistant, Caroline Lippie ("Ms. Lippie"), charged a rate of $139.00 per hour. This rate is also within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. I further find that the time that Ms. Hawkins and Ms. Lippie spent working on this case, which is detailed in Ms. Hawkins' affidavit (*id.* ¶ 6), is reasonable. Finally, NEBF incurred a total of $550.00 in costs, which includes the $400.00 fee for filing the complaint and a $150.00 service fee. (*Id.* ¶ 8.) I recommend that the Court award NEBF attorney's fees in the amount of $1,775.10 and costs in the amount of $550.00.

In total, I recommend that $14,555.66 in damages be awarded to NEBF against Great Lakes. This amount is comprised of $8,877.53 in delinquent contributions; $1,772.74 in interest; $1,064.74 in liquidated damages; $515.55 in audit fees; $1,775.10 in attorney's fees; and $550.00 in costs. I also recommend that NEBF be awarded any additional fees and costs incurred in connection with the enforcement of the judgment, and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

## III. CONCLUSION

In sum, I recommend that the Court:

1. Grant National Electrical Benefit Fund's Motion for Default Judgment (ECF No. 10);

2. Enter judgment in favor of National Electrical Benefit Fund against Great Lakes Electrical Contractors, Inc. in the amount of $14,555.66, plus post-judgment interest to accrue at the legal rate;

I also direct the Clerk to mail a copy of this Report and Recommendation to Great Lakes Electrical Contractors, Inc. Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

August 2, 2018  /s/
Date  Timothy J. Sullivan
  United States Magistrate Judge